UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:<br><br>CRAIG FROST,<br><br>Debtor. | Case No. 21-20463-NGH<br><br><br>Chapter 7 |

## MEMORANDUM OF DECISION

Before the Court is an objection to Creditor Karma Habitation's amended proof of claim filed by the chapter 7 trustee, Patrick Geile.[1] A hearing on the matter was held on June 12, 2023, with Trustee and Creditor submitting supplemental briefing and responses by June 26, 2023, after which the Court took the matter under advisement. Doc. Nos. 325, 329, 331, & 332.

## BACKGROUND

Creditor filed a proof of claim, asserting a $413,528.33 claim secured by Debtor Craig Frost's Maplewood property (the "Property"). The Property was sold at auction on March 27, 2023, for $3,300,000, pending Court approval. Doc. No. 297. Creditor amended its proof of claim on March 29, 2023, to include post-petition attorneys' fees, increasing its claim to $529,171.93. Trustee objected to Creditor's amended proof of claim on April 4, 2023. Doc. No. 292.

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. §§ 101–1532. Additionally, all citations to "Rule" are to the Federal Rules of Bankruptcy Procedure and all citations to "Civil Rule" are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION - 1

On April 7, 2023, the Court approved the sale of the Property for $3,300,000. Doc. No. 297. In the order approving the sale, Trustee was ordered to distribute $413,528.33 to Creditor. However, the order acknowledged that Trustee had a pending objection to Creditor's amended proof of claim to the extent it exceeded $413,528.33, and required Trustee to keep the net sale proceeds to be maintained in a segregated account until the Court adjudicated the claim objection.

After the June 12 hearing on the matter, Trustee supplemented his limited objection to Creditor's amended proof of claim, clarifying the specific attorneys' fees to which he objects.[2] Doc. No. 329. Creditor responded to Trustee's supplement on June 26, 2023. Doc. No. 332. In its reply brief, Creditor requested an additional $17,580 in attorneys' fees for the preparation and defense of its proof of claim. Trustee objected to Creditor's request for additional fees, asserting that including the request in the reply brief was not proper. Doc. No. 333.

## ANALYSIS

### A.   Prepetition Fees

First, Trustee objects to certain attorneys' fees that were incurred prepetition. Prepetition fees are governed by § 502 and the general claims allowance process. *In re Lopez*, 349 B.R. 671, 676 (Bankr. D. Idaho 2006). Pursuant to Rule 3001(f), a timely filed proof of claim constitutes prima facie evidence of the validity and amount of the claim. The party objecting to the claim bears the burden of producing sufficient evidence to negate the prima facie validity. *In re Best View Constr. & Dev., LLC*, 2021 WL

---

[2] Trustee did not object to the hourly rate charged by Creditor's attorney.

MEMORANDUM OF DECISION - 2

3745423, at *5 (Bankr. D. Idaho Aug. 24, 2021). If the objecting party produces sufficient evidence, the burden shifts back to the claimant who must prove it is entitled to the claim by a preponderance of the evidence. *Best View Constr.,* 2021 WL 3745423, at *5. The ultimate burden of persuasion remains at all times upon the claimant.

Creditor asserts Trustee is estopped from objecting to its proof of claim for prepetition fees because its initially filed proof of claim included such fees and Trustee paid out Creditor in such amount from the sale proceeds of the Property. Judicial estoppel "'precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.'" *Rainsdon v. Duncan L.P. (In re Duncan)*, 2023 WL 2229349, at *8 (Bankr. D. Idaho Feb. 24, 2023) (quoting *Wilcox v. Parker (In re Parker)*, 471 B.R. 570, 576 (9th Cir. BAP 2012)). "The doctrine is an equitable one, invoked in the exercise of discretion by a bankruptcy court." *Id.*

Trustee has not taken inconsistent positions regarding the portion of the amended proof of claim dealing with prepetition services. Creditor argues Trustee impliedly found the prepetition attorneys' fees reasonable because Creditor's initial proof of claim of $413,528 included the prepetition attorneys' fees and Trustee permitted distribution from the sales proceeds in that amount.[3] However, in Trustee's amended motion for sale filed March 8, 2023, Trustee specifically reserved the right to object to Creditor's proof of claim. Doc. No. 275. Trustee then filed his objection to Creditor's amended proof of

---

[3] Creditor also argues Trustee made assertions in external communications that Trustee would not be objecting to Creditor's proof of claim. However, the fact that Trustee at one point did not plan on objecting to Creditor's claim does not warrant the application of judicial estoppel, especially considering the short time frame in which Trustee communicated that he would be making a limited objection to Creditor's claim of attorneys' fees.

MEMORANDUM OF DECISION - 3

claim on April 4, 2023, specifying he was objecting to both pre- and post-petition attorneys' fees. The order granting the motion for sale was entered April 24, 2023. Doc. No. 303. In the order granting the motion for sale, the Court ordered Creditor be paid $413,528.33, but acknowledged that Trustee maintained an objection to Creditor's claim to the extent it exceeded such amount.

Ultimately, while Creditor has been paid $413,528.33, Creditor is seeking to be paid an additional $115,643.60. Trustee objects to $91,414.05 of this additional claim. Doc. No. 329 at 2. Such an objection is not inconsistent with Trustee's prior action in distributing the $413,528.33 from the sale proceeds.

Having determined Trustee's objection to the prepetition fees is not estopped, the Court will turn to the merits of Trustee's objection. "Under § 502(b), the Court must determine the amount of the claim and allow it unless the claim is unenforceable against debtor or property of the estate under 'any agreement or applicable law.'" *Lopez*, 349 B.R. at 677 (quoting § 502(b)(1)). In *Lopez*, the Court considered a claim for prepetition attorneys' fees where a promissory note between the parties permitted for "'reasonable' attorneys' fees incurred in a suit on or foreclosure of the promissory note." *Id.* The Court then performed a reasonableness analysis similar to that performed under § 330(a) to determine certain prepetition fees were not allowed.

Here, like in *Lopez*, the agreement between the parties calls for "reasonable attorneys' fees." As such, the Court will undertake a similar analysis. Trustee objects to the following pre-petition attorneys' fees accrued by Witherspoon Kelley:

MEMORANDUM OF DECISION - 4

| Date | Atty | Description | Hours | Amount |
|---|---|---|---|---|
| 9/23/21 | DMD | Review Frost Complaint and Temporary Restraining Order, Declaration of Atty. Poorman; telephone conferences with Atty. Ripley and Piskel; review and reply to Atty Poorman email; conference with Atty. Ripley; review I.C. 45-1506 et. seq.; telephone conference with Atty. Piskel. | 1.8 | $693.00 |
| 10/06/21 | DMD | Review various pleadings in Frost v. Karma Habitation et. al.; telephone conferences with Atty. Piskel; conference with Atty. Hazel; email Piskels office; review I.C. 45-1505 re notice requirements | 2.4 | $924.00 |
| 10/07/21 | JPH | Prepare for preliminary injunction hearing by reviewing pleadings; attend preliminary injunction hearing; telephone conference with Atty. Piskel; attend court announcement of decision on preliminary injunction | 3.1 | $1,054.00 |
| 11/18/21 | DMD | Review pleadings re Receiver Motion for TRO and Preliminary Injunction; research and analysis; conference with Atty Hazel; telephone conferences with Atty Piskel; file memo; instruction to paralegal | 2.5 | $926.50 |

Doc Nos. 307 at 102–113 & 329 at 13–14. Trustee objects to these fees because the time entries appear to be duplicative of the work also performed by the law firm Piskel Yahne Kavorik. Attorneys from Witherspoon Kelly and Piskel Yahne Kavorik appear to bill for similar tasks, including reviewing the complaint and temporary restraining order on September 23, 2021, as well as preparing for and attending the preliminary injunction hearing on October 7, 2021.

     In response to Trustee's objections concerning the duplicative work, Creditor explained that while some of the work appeared to be duplicative, both law firms were performing separate services. Piskel Yahne Kavorik was representing Creditor, while

MEMORANDUM OF DECISION - 5

Witherspoon Kelley was representing Dennis Davis, the successor trustee on the deed of trust who was named in the state court lawsuit filed by Debtor.

Ultimately, the Court need not address whether the two firms performing the same tasks is reasonable as the Court is concerned with the lumping of services in Witherspoon Kelley's time sheet. "The case law is explicit that lumping of services is 'universally disapproved by bankruptcy courts.'" *In re Telcar, Inc.*, 2007 WL 1438376, at *3 (Bankr. D. Idaho May 15, 2007) (quoting *In re Staggie*, 255 B.R. 48, 55 (Bankr. D. Idaho 2000)). The Court "must disallow those fees claimed if the Court cannot determine whether the amount charged for services was reasonable because the time entries in the lawyers' accounting are 'lumped.'" *In re Treasure Valley Marine*, 2020 WL 6821789, at *5 (Bankr. D. Idaho Oct. 15, 2020). Lumping occurs where multiple services are included in the same time entry, making it difficult to discern how much time was spent on each task and whether that time was reasonable. *See id.* Here, the time entries to which Trustee objects include lumped services, including tasks such as document review, telephone conferences, and email correspondence all within the same time entry. As such, the Court cannot determine the reasonableness of Witherspoon Kelley's fees and the Court will grant Trustee's objections to the prepetition fees that were incurred by Witherspoon Kelley that were described above and will reduce Creditor's claim of attorneys' fees by $3,597.50.

**B.    Post-Petition Fees**

Trustee also objects to certain post-petition fees as unreasonable or unnecessary to protect Creditor's interest. The allowance of post-petition fees is governed by § 506(b).

MEMORANDUM OF DECISION - 6

Under § 506(b), a secured creditor may recover "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which the claim arose." There "are four requisites for fees under this section: (1) the creditor's claim is an allowed secured claim; (2) the creditor is oversecured; (3) the fees are reasonable; and (4) the fees are provided for under the agreement." *Crawforth v. Ajax Enters., LLC (In re Pheasant Cove, LLC)*, 2008 WL 187529, at *7 (Bankr. D. Idaho Jan. 18, 2008).

The first element is not at issue—Trustee has not objected to the validity of Creditor's secured claim, except for the limited objections to the pre- and post-petition fees. Next, Creditor is oversecured, as the Property sold for $3,300,000 while Creditor's claim, involving all asserted fees, is $529,171.93.[4] However, Trustee has raised objections under the third and fourth elements—whether the fees are reasonable and provided for under the agreement.

The promissory note allows for the recovery of attorneys' fees. The relevant language provides:

> all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness . . .. Expenses covered by this paragraph include, without limitation, . . . Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction).

---

[4] The Court notes there were senior lien holders. However, even factoring in those lien holders, Creditor was oversecured.

MEMORANDUM OF DECISION - 7

POC 12-1, attach. 3 at 6–7.  This language clearly contemplates compensating for attorneys' fees for services rendered during bankruptcy proceedings.  However, "[a]n oversecured creditor is not entitled to compensation for its attorneys' fees for every action it takes by claiming that its rights have been affected."  *In re Duncan*, 2009 WL 1619900, at *6 (Bankr. D. Mont. June 8, 2008).  Even under broad fee provisions, "attorney fees incurred by a secured creditor do not become part of the secured claim unless they are reasonable in amount and were incurred for services reasonably necessary to protect the secured creditor's interest in the collateral."  *In re Van Upp*, 2010 WL 235082, at *1 (Bankr. N.D. Cal. Jan. 20, 2010).

A secured creditor has the burden of proving the reasonableness of its fee claim under § 506(b).  *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227 (9th Cir. BAP 2003).  "The reasonableness requirement in Section 506(b) was intended to prevent creditors from "'fail[ing] to exercise restraint in the attorneys' fees and expenses they incur, perhaps exhibiting excessive caution, overzealous advocacy and hyperactive legal efforts.'"  *Staggie*, 255 B.R. at 54 (quoting *In re Gwyn*, 150 B.R. 150, 156 (Bankr. M.D.N.C. 1993).  As noted in *Duncan*, "if a creditor's claim is not in jeopardy, then overworking the case for fees is not reasonable."  2009 WL 1619900, at *7.

Courts have considered the reasonableness of services performed by secured creditor counsel during a bankruptcy case and the necessity of such services to protect the creditor's interest.  *See Bodega Bay Sunset Prop., LLC v. Boek (In re Bodega Bay Sunset Prop., LLC)*, 2003 WL 22945666, at *1 (Bankr. N.D. Cal. 2003) (finding filing a proof of claim, monitoring proceedings, filing a motion for relief from the automatic stay, and

MEMORANDUM OF DECISION - 8

objecting to the debtor's plan were all reasonable and necessary to protect the creditor's interest). In *Van Upp*, the debtor failed to maintain the collateral, allowing it to fall into a state of disrepair, and further delayed the bankruptcy proceedings. 2010 WL 235082, at *2. The bankruptcy court determined that the secured creditor's active participation in pushing along the bankruptcy, including filing motions for relief from stay, monitoring the debtor's use of cash collateral, prosecuting a 2004 examination of the debtor, and opposing motions to dismiss, was reasonable because of concerns that the collateral would substantially decline, and repayment would be unreasonably delayed. *Id.* at 2–3.

However, when secured creditors engage in litigation that does not relate to their secured interest, courts will refuse to compensate for attorneys' fees. *See Sensenich v. Molleur (In re Chase)*, 336 B.R. 681, 685 (Bankr. D. Vt. 2005) (finding attorneys' fees in connection with the defense of a fraudulent transfer act were not compensable under § 506(b)). In *Campbell*, a bankruptcy court found that a secured creditor's actions in seeking a partition and the imposition of a constructive trust were not necessary to protect secured creditor's interest and thus not compensable under § 506(b)). *Campbell v. Buckley (In re Campbell)*, 402 B.R. 453, 463 (Bankr. D. Mass. 2009). In so holding, the court considered the fact that the value of the property was significantly higher than the amount owed to the secured creditor, and thus the extraneous actions taken to ensure repayment were unreasonable because there was an "absence of any likelihood that repayment . . . was in serious jeopardy." *Id.*; *see also Staggie*, 255 B.R. at 56–57 (finding the extent of services provided by creditor's counsel unreasonable where creditor's claim was not in serious jeopardy of nonpayment).

MEMORANDUM OF DECISION - 9

### 1. Unnecessary Fees

Trustee first objects to attorneys' fees asserted by Creditor under § 506(b) as being unnecessary to the protection of Creditor's secured interest.

#### a. Objection to Homestead Exemption and Motion for Sanctions

Trustee objects to the $35,873.40 billed in connection with Creditor's objection to Debtor's claimed homestead exemptions, as well as the $8,310 billed in connection with Creditor's motion for sanctions against Debtor's counsel. Creditor argues that objecting to Debtor's homestead exemption was necessary to protect its own interest because depending on the value of the collateral, Creditor's claim could have been partially unsecured and would have been impaired by Debtor's homestead exemption. Further, Creditor asserts that "the time spent in connection with possible sanctions against former counsel for Debtor was inextricably intertwined with objecting to the Debtor's homestead exemption." Doc. No. 331 at 9. Creditor asserts such motion was to the benefit of the estate and its creditors and "potential harm to the estate caused by the Debtor's course of action was offset, in part, by the reduction in fees to Debtor's counsel." *Id.*

The Court is unconvinced by Creditor's argument. While objecting to Debtor's homestead exemption arguably helped protect Creditor's interests in the event its claim was partially unsecured, a prerequisite to obtaining fees under § 506(b) is that the creditor is oversecured. It would not be reasonable for Creditor to be compensated under § 506(b), which requires a creditor to be oversecured, for services that were only arguably necessary to protect a potential unsecured interest.

MEMORANDUM OF DECISION - 10

Further, objecting to a claim of homestead exemption is not necessary to protect Creditor's secured interest in the collateral, as the homestead exemption only applies to Debtor's equity in the Property over and above any secured interest.  Because the fees billed in connection with objecting to Debtor's homestead exemption were not reasonably necessary to protect Creditor's secured interest in the collateral, the Court will disallow those fees.  Additionally, the Court finds that the fees associated with seeking sanctions against Debtor's counsel were not reasonably necessary to protect Creditor's secured interest in the Property.  As such, the Court will also disallow those fees.

### b. Objection to Chapter 11 Plan and Disclosure Statement

Trustee also objects to the $8,305 billed for services related to Creditor's objections to Debtor's disclosure statement and proposed chapter 11 plan, claiming such objections were unrelated to its interest in the Property.  Courts have approved attorneys' fees billed in relation to a secured creditor's objections to a debtor's plan of reorganization.  *See Bodega Bay Prop.,* 2003 WL 22945666.  Here, Creditor asserts its rights and remedies could have been affected by Debtor's chapter 11 plan, and it was entitled to be adequately informed about the proposed plan.  The Court agrees and finds it was reasonable and necessary for Creditor to monitor and object to the disclosure statement and chapter 11 plan in order to protect its secured interest.  As such, the Court will allow the $8,305 billed in connection with Creditor's objections to the disclosure statement and chapter 11 plan.

MEMORANDUM OF DECISION - 11

### c. Motion to Convert or Dismiss

Next, Trustee objects to the $1,205 billed in relation to the motion to convert or dismiss Debtor's bankruptcy case. Creditor asserts the motion to dismiss or convert had an impact on its ability to recover payment and enforce its rights in the bankruptcy.

Courts have found the participation of a secured creditor in a motion to convert or dismiss to be reasonable and necessary under § 506(b). *See S. Canaan Cellular Invs., LLC v. Lackawaxen Telecom, Inc. (In re S. Canaan Cellular Invs.)*, 2010 WL 3294177 (Bankr. E.D. Pa. 2010) (upholding fees under § 506(b) for services in connection with an unsuccessful motion to dismiss the debtor's chapter 11 plan); *see also In re Jemps, Inc.* 330 B.R. 258, 263 (Bankr. D. Wy. 2005) (finding fees billed by a secured creditor in connection with motion to dismiss were reasonable under § 506(b)). Likewise, the Court here finds Creditor's participation in the conversion motion reasonable to protect its interest. Further this billing is not overzealous as it is a fairly minimal amount of time expended. As such, the Court finds these fees reasonable and will approve the same.

### d. Additional Participation in Debtor's Bankruptcy

Trustee likewise objects to the $5,862.50 billed in connection with Creditor otherwise participating in Debtor's bankruptcy. The services include attending the meeting of creditors, reviewing documents, including monthly operating reports and motions filed in the case, and communicating with other parties' counsel. Considering the numerous issues and delays presented in this bankruptcy case, the Court finds it was reasonably necessary for Creditor to actively monitor the progress of and ongoings issues

MEMORANDUM OF DECISION - 12

in the bankruptcy case to ensure its interest remained protected. As such, the Court will not reduce Creditor's requested fee for such services.

### 2. Excessive Fees

Additionally, Trustee objects to a variety of other attorneys' fees asserted by Creditor for being excessive or unreasonable under § 506(b).

#### a. Proof of Claim.

Trustee asserts that the 13.5 hours spent preparing an initial proof of claim is excessive, considering the proof claim was relatively straightforward. However, Creditor asserts the 13.5 hours was reasonable because it had to calculate the categories of costs, characterize the debt, draft the documents, compile the loan documents, and evaluate the collateral. Preparation and filing of a proof of claim is fairly routine and should not require a significant time expenditure. *See In re McCormick*, 417 B.R. 372, 375–76 (Bankr. M.D.N.C. 2008) (reducing attorneys' fee under § 506(b) where the court found $2,491 was an excessive amount to bill for the preparation of a proof of claim). Here, Creditor has not adequately explained why the preparation of the proof of claim warranted 13.5 hours of work amounting to $4,085.00 in fees. Nor has Creditor explained why certain tasks associated with preparing the proof of claim, such as compiling the loan documents from the file, could not have been handled by a paralegal, at a much lower hourly rate. As such, the Court will reduce the fees requested to $1,540, which amounts to four hours of work by Creditor's attorney.[5]

---

[5] Creditor's March 1, 2022, time entry for preparing the proof of claim, totaling 6.9 hours, also includes lumped services, which independently supports disallowing those fees.

MEMORANDUM OF DECISION - 13

### b. Drafting Stay Relief and Inspecting Property

Trustee objects to the fees of $4,350 for the 14.5 hours spent drafting the stay relief motion, as well as the $1,350 associated with inspecting the real property and $4,000 in costs to obtain an appraisal. The Court agrees with Trustee that 14.5 hours is an unreasonable amount of time to bill for the drafting of a stay relief motion, which was relatively straightforward. The Court will reduce the fees requested to $1,925, which is amounts to five hours of work by Creditor's attorney.

The Court, however, finds it was reasonable for Creditor to inspect the Property and obtain an appraisal to ensure its secured interest was being fully protected. Creditor was not required to rely upon Trustee's assurances that the Property would be sold for an appropriate amount. Many of the challenged time entries associated with inspecting the property consist of communications to coordinate with Debtor and Trustee for the inspection. Those fees are reasonable. However, on January 30, 2023, Creditor's attorneys billed 3.2 hours, totaling $960, to travel to the Property, attend the inspection, and communicate with third parties regarding the inspection.[6] Creditor does not explain why it was necessary for its attorney to attend the inspection with Creditor's appraiser. Further, this time entry includes lumped time entries, and as such, the Court will reduce the requested fees by $960.

---

[6] That time entry reads "to Maplewood Property for inspection from office and return to office, including calls w/ J. Piskel, emails w/ Debtor counsel and Trustee, and Karma appraisers/experts re: same." Doc. No. 307, Ex. A at 65 & 329 at 44.

MEMORANDUM OF DECISION - 14

### c. Responding to Trustee's Requests

Next, Trustee asserts the $3,400 billed for the 11.2 hours spent responding to Trustee's request to support the fees and costs claim is excessive and should be reduced. However, several of the services to which Trustee objects go beyond merely responding to Trustee's request and include preparing the amended proof of claim as well as researching Trustee's objection to the proof of claim. The Court finds these fees to be reasonable and accordingly finds them allowable under § 506(b).

### d. Communications

Trustee objects to $4,470 billed for 14.2 hours spent communicating with various parties, including the U.S. Trustee, Trustee, Debtor's counsel, and the Court. However, the communications to which Trustee objects appear to be related to several important aspects of the bankruptcy case, including the motion for stay relief, the conversion motion, and the sale of the Property. Communicating with external parties is necessary to the efficient resolution of the myriad of issues present during the course of a bankruptcy case. As such, the Court finds that the $4,470 billed for communications with various parties during the course of litigation was reasonable.

Trustee also objects to 2.6 hours that were billed for intra-firm communications between multiple attorneys working on the matter for a total of $825. Allocating multiple attorneys to a given matter will present the need for intra-office communications. However, time spent getting other attorneys within a firm up to speed, while important, are not reasonably billed. *See In re Pan Am. Gen. Hosp., LLC*, 385 B.R. 855, 873

MEMORANDUM OF DECISION - 15

(Bankr. W.D. Tex. 2008). As such, the Court will disallow the $825 billed for intra-firm communication.

### C.  Additional Fees Requested

Creditor further requests an additional $17,580 in attorneys' fees and costs under § 506(b) for services performed defending the amended proof of claim. However, the reply brief is not an appropriate place to assert such a claim as Trustee and other interested parties were not given an opportunity to respond to such a request. *See Ballard v. Chrysler Fin. Corp. (In re Powe)*, 281 B.R. 336 (Bankr. S.D. Ala. 2001) (noting that in a request under § 506(b), "[n]otice must be given which is 'reasonably calculated, under all the circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections.'"). As such, the Court will not consider Creditor's request for the additional $17,580 in attorneys' fees.

### D.  Any Fees Deemed Unreasonable Allowed as Unsecured

Finally, Creditor has requested that any attorneys' fees deemed unreasonable under § 506(b) be allowed as an unsecured claim. The Ninth Circuit has held "that a creditor may assert an unsecured claim for fees and costs arising under its contract with the debtor, even though the creditor's claim was not an allowed secured claim under section 506(b)." *SNTL Corp. v. Ctr. Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 842 (9th Cir. 2009). This includes fees determined to be unreasonable under § 506(b). *Id.* (noting that § 506(b) does not state that unreasonable fees are to be disallowed); *see also Welzel v. Advocate Realty Invs. (In re Welzel)*, 275 F.3d 1308 (11th Cir. 2001) (holding that "unreasonable fees under § 506(b) constitute allowable, but unsecured, claims").

MEMORANDUM OF DECISION - 16

While attorneys' fees disallowed under § 506(b) may be permitted as an unsecured claim in certain circumstances, the operative contract language here specifies that only reasonable expenses, including reasonable attorneys' fees, are compensable under the parties' agreement. POC 12-1, attach. 3 at 6–7. Because the Court has found that the disallowed fees are unreasonable, such fees are not contemplated by the parties' agreement and the Court will not allow such fees as an unsecured claim.

**CONCLUSION**

Based on the foregoing, the Court will sustain Trustee's objection in part and overrule it in part. Because the Court finds certain fees asserted by Creditor to be unreasonable under either § 502 or under § 506(b), the Court will reduce Creditor's request for attorneys' fees under § 506(b) by $54,535.90 for a total award of $61,107.70. This amount is in addition to the $413,528.33 already distributed to Creditor. Creditor shall submit an order consistent with this decision.

DATED: October 5, 2023



_____
NOAH G. HILLEN
U.S. Bankruptcy Judge

MEMORANDUM OF DECISION - 17